## HARDWARE MUTUAL CASUALTY COMPANY, Plaintiff,

v.

## The SHELBY MUTUAL INSURANCE CO., Mary Patricia O'Malley, a minor, Helen Hromyko, Isabella Barkley, Virgil A. Barkley, Philip R. Statler, Defendants

No. 34422.

United States District Court
N. D. Ohio, E. D.
Aug. 27, 1962.

Wm. M. Byrnes, Wm. A. Kane, Jamison, Ulrich, Hope, Johnson & Burt, Cleveland, Ohio, for plaintiff.

Rees H. Davis, Jr., Edward J. Kirk, Sindell, Sindell, Bourne & Disbro, Richard M. Markus, Robert M. Weh, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for defendants.

KALBFLEISCH, District Judge.

This is an action for declaratory judgment on behalf of the Hardware Mutual Casualty Company, hereinafter referred to as "Hardware," against The Shelby Mutual Insurance Company, hereinafter referred to as "Shelby," Helen Hromyko, Virgil Barkley, and Isabelle Barkley. The action was tried to the Court and extensive findings of fact were made.

Philip Statler was, on July 30, 1957, the owner of a 1955 Mercury. On that date he went with Mary Patricia O'Malley (Sheldon), hereinafter referred to as "O'Malley," who was not a relative of Statler, to the sales agency of Euclid Shore Motors, Inc., hereinafter referred to as "Euclid," for the purpose of buying a car. A deal was arranged by which Statler traded his 1955 Mercury on a new 1957 Mercury. To cover part of the purchase price he executed a note and a chattel mortgage on the new car. In consummating the sale Statler signed the necessary documents for the transfer of title of his old car to Euclid, and was informed by Euclid that it would take care of the details of transferring title of the new car to him and that he, Statler, need do nothing further in order to obtain legal title to that automobile.

The negotiations for sale were conducted with one Gilbert Leffler, a salesman, and with Paul Chiarullo, assistant sales manager of Euclid. During all of these negotiations, O'Malley was with Statler. At that time it was made known to Chiarullo that O'Malley would drive the new automobile which Statler was purchasing and that O'Malley intended to take the car on a trip the following day.

At the time that Euclid, through its agent Chiarullo, gave possession of the

new Mercury to Statler the terms of the sale had been fully agreed upon and it was the intention of Chiarullo and of Euclid to deliver complete and unrestricted use, possession and control of that automobile to Statler in accordance with the custom and usage prevailing in the automobile sales business. No restrictions of any sort were placed on the use to be made of the car.

On the same day, July 30, 1957, Statler took possession of the new car, leaving his 1955 Mercury as a trade-in. It was recognized by the parties that some time would elapse before a certificate of title to the 1957 Mercury would be issued in Statler's name. On that day the new car was titled in Euclid, and owned by Euclid.

The next day, July 31, 1957, O'Malley was driving the 1957 Mercury on the Pennsylvania Turnpike when it was involved in an accident with the Barkley automobile, as a result of which claims for injuries have been asserted by Hromyko and the Barkleys in the Court of Common Pleas of Cuyahoga County. At the time of the accident O'Malley was using the car solely for her own purposes, with the express permission of Statler, for reasons personal to Statler and O'Malley. A certificate of title covering the 1957 Mercury had not been issued in the name of Statler at that time. O'Malley contacted Chiarullo that day to inform him of the accident. Following this, Statler never again saw or had possession of the 1957 Mercury.

At the relevant times, Euclid had a policy of automobile garage liability insurance with Hardware, the pertinent provisions of which are as follows:

"b. Definition of Hazards. Division 1. Premises—Operations—Automobiles. The ownership, maintenance or use of the premises for the purpose of an automobile sales agency * * * and all operations necessary or incidental thereto; * * * and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, * * *.

"c. Definition of insured * * * the unqualified word 'insured' includes the named insured and also includes * * * (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Statler had a casualty insurance policy with the defendant Shelby covering the 1955 Mercury which Statler traded in on the 1957 Mercury. In relevant terms, this policy provided that:

"b. Persons insured: The following are insureds under Part 1:

"(a) With respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2) any other person using such automobile provided the actual use thereof is with the permission of the named insured;

"(b) With respect to a non-owned automobile,

"(1) the named insured,

"(2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative;

"(c) Any other person or organization legally responsible for the use of:

"(1) an automobile or trailer not owned or hired by such person or organization, or

"(2) a temporary substitute automobile, provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such automobile or trailer.

"c. 'named insured' means the individual named in Item 1 of the declarations * * *.

"e. 'relative' means a relative of the named insured who is a resident of the same household.

"f. 'owned automobile' means a private passenger or utility automobile * * * owned by the named insured, and includes a temporary substitute automobile.

"g. 'temporary substitute automobile' means any automobile * * * while temporarily used as a substitute for the owned automobile * * * when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"h. 'non-owned automobile' means an automobile * * * not owned by the named insured or any relative, other than a temporary substitute automobile."

The plaintiff, Hardware, contends that it is not liable for any damages resulting from the accident involving the 1957 Mercury and contends that Shelby is so liable. Hardware seeks in this declaratory judgment a determination of Shelby's liability and of its liability.

**1.** *Ownership of the new automobile.*

At the time of the accident title to the 1957 Mercury had not been issued in Statler's name. Therefore Statler was not the owner of the car; rather, title remained in Euclid, making it the owner. Section 4505.04, Ohio Revised Code, 1953, Brewer v. DeCant, 167 Ohio St. 411, 149 N.E.2d 166 (1958).

**2.** *Liability of Hardware Mutual.*

The question that must be decided is whether the use of the car by O'Malley was within the terms of the Hardware policy. That policy provided that it covered "The ownership, maintenance or use of any automobile in connection with the [operation of an automobile sales agency] * * *." The question, therefore, is whether the use was pursuant to Euclid's operation of an automobile sales agency.

It is clear that the term "use" of an automobile covers a much broader category of activities than the term "driv-

ing." Brown v. Kennedy, 141 Ohio St. 457, 48 N.E.2d 857 (1943).

The only case in which the facts are, in their entirety, clearly like those in this case is Kane v. Employers Liability Assurance Corp., 252 F.2d 48 (6th Cir., Feb., 1958). In that case an automobile sales agency had sold a car to Stephen, Sr., and delivered possession to him. Title remained in the name of the sales agency at the time the car was involved in an accident while being driven by Stephen, Jr. The question was whether the garage liability policy covered the car at the time of the accident. The Sixth Circuit Court of Appeals, affirming a decision by the trial court, held that the garage liability policy did not cover the car at that time. This holding was based specifically upon the determination that the use being made of the car was not in connection with the garage business. No authority was cited for this proposition. While that case was intended to be declaratory of the law of Ohio at that time, it was contradicted only a few months later by the Supreme Court of Ohio in Brewer v. DeCant, 167 Ohio St. 411, 149 N.E.2d 166 (April, 1960).

In Brewer the automobile sales agency had sold the car to the first buyer, arranging financing through Commercial Credit Corporation. The first buyer being unable to complete payments on the car, it was repossessed. Title had been transferred to this first owner and remained in him at the time of the accident. For resale, the car was placed on the lot of the original seller who resold it to DeCant. Twenty-four days later the car, driven by DeCant, was involved in the accident. The question in the case was whether the sales agency's insurance company was liable for the injuries under the terms of a policy which in relevant provisions was identical to the Hardware policy involved in this case. The Supreme Court of Ohio held that the use of the automobile by the second buyer while title was still in the original buyer was a use by the automobile sales agency so as to bring the accident within the terms of its insurance policy. In

effect, the Court said that until a certificate of title to the car was issued to a purchaser the car was being used by the sales agency and was covered by that policy. For cases indicating similar results, see Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co., 157 Ohio St. 385, 105 N.E.2d 568, 31 A.L.R.2d 1317 and Farm Bureau Mutual Automobile Insurance Company v. Motorists Mutual Insurance Co., 110 Ohio App. 12, 168 N.E.2d 159 (1957).

The Brewer decision governs the present case. Here the car was, at the time of the accident, titled in Euclid. A certificate of title had not been issued to the purchaser. The car was being used with the permission of Euclid and of the purchaser. Therefore it was being used in the business of Euclid within the terms of the Hardware policy.

The use of the 1957 Mercury having been pursuant to the business of Euclid, the question remains whether the use was by a person covered in the Hardware policy. In relevant provisions the policy provides:

> "Definition of insured. With respect to the insurance * * * the unqualified word 'insured' includes the named insured and also includes * * * any person while using an automobile covered by this policy * * * provided the actual use of the automobile is by the named insured or with his permission."

The question is whether O'Malley drove the car to Pennsylvania with the permission of the insured, Euclid Shore Motors, Inc.

It is contended that the law implies Euclid's permission for O'Malley to drive the car because Euclid gave the purchaser, Statler, unrestricted possession of it. A study of the decisions of the Courts of Ohio indicates that under the Ohio law, which governs this case, O'Malley had no such legally implied permission. Fox v. Crawford, 80 N.E.2d 187 (Ohio Ct.App., 1947); Marolt v. Lisitz, 94 Ohio App. 298, 115 N.E.2d 169 (1952); West v. McNamara, 159 Ohio St. 187, 111 N.E.2d 909 (1953).

See also Samuels v. American Automobile Insurance Co., 150 F.2d 221, 160 A. L.R. 1191 (10th Cir., 1945), for a similar opinion.

The question then arises whether O'Malley had permission implied in fact to drive the car.

There was no substantive evidence to contradict any of the following facts: One of Statler's principal purposes in purchasing a car at this time was to give O'Malley a better car than his 1955 Mercury to drive on her trip to Philadelphia. When Statler and O'Malley went to Euclid on the 30th of July, Statler had not definitely decided to purchase a new automobile. He was concerned with having a car that would be safe for O'Malley to take on the trip. Euclid, through Chiarullo, suggested that if Statler purchased a new car he would not have to worry about mechanical difficulty when O'Malley drove the car on the trip to Philadelphia. Even with the prospect of a new car, O'Malley continued to be concerned about having auto trouble on the trip. Euclid informed her that if she had any trouble with the new Mercury she should go to any Mercury garage along the route and have the necessary repairs made. It instructed her to send any bills for such repairs back to Euclid in Cleveland.

When Statler and O'Malley test drove the new car it was O'Malley who drove it when they left the garage. Likewise, when they picked up the new car that evening it was O'Malley who drove it away, with Statler accompanying her in the front seat.

■ Notice of these facts to Chiarullo, the assistant sales manager of Euclid, was notice to Euclid (Restatement of Agency 2nd, Sections 268, 270), and constituted knowledge by Euclid of such facts. (Restatement of Agency 2nd, Section 272.)

■ When Euclid gave the car to Statler to use as his own, placed no restrictions on such use, received actual notice that O'Malley would take the car on the trip to Philadelphia, and made no objections thereto, but instead suggested

that a new car would be safer on such a trip than a used one and instructed O'Malley as to procedure in case of mechanical difficulty, it did in fact give O'Malley permission to make such use of the car. For a statement of the law in a highly analogous situation, see Restatement of Agency 2nd, Sections 26 and 34.

O'Malley was thus using the car at the time of the accident with the implied in fact permission of Euclid, the named insured, and thus was a person covered by the terms of the policy, as required by the Ohio Revised Code (1953), Section 4509.51. In relation to such implied in fact permission's creating insurance coverage, see Fox v. Crawford, 80 N.E.2d 187 (Ohio Ct.App.1947); Marolt v. Lisitz, 94 Ohio App. 298, 115 N.E.2d 169 (1952); West v. McNamara, 159 Ohio St. 187, 111 N.E.2d 909 (1953).

The use of the car by O'Malley having been pursuant to the business of an automobile sales agency of Euclid, and with the permission of Euclid and Statler, such use was within the terms of the policy issued to Euclid by Hardware and Hardware is liable to defend O'Malley in any actions arising out of the accident and to indemnify her for any losses to the extent of its liability under the policy.

### 3. Liability of Shelby Mutual.

The Shelby policy did not have the standard clause extending automatic coverage to newly acquired automobiles of the insured. Therefore, if Shelby is liable it must be under other terms of the policy. Because title to the car was in Euclid, any liability arising because of ownership is Euclid's liability rather than Statler's. Young v. Emanaker, Ohio Com.Pl., 164 N.E.2d 473 (1960). To hold Shelby liable, the injured parties must bring O'Malley within some terms of the Shelby policy covering losses in automobiles not owned by the insured. However, clause (b) of the policy covers the use of such a non-owned automobile only when it is being used by the insured or his relative. O'Malley, not being a relative of Statler, cannot qualify for coverage under that provision. The new car was not a temporary substitute automobile within the terms of the policy granting coverage to any permittee driving a temporary substitute automobile of the insured. Nor was O'Malley a person legally responsible for the use of the automobile within the terms of clause (c), because this was not an owned automobile of the insured within the provisions of clause (a) and O'Malley was not a relative of the insured within the provisions of clause (b).

Because the terms of the policy did not cover a nonrelative who was driving a car owned by someone other than the insured, and because such a restriction on coverage was not in conflict with Sections 4509.48–4509.58, Ohio Revised Code (1953), O'Malley was not an insured under the terms of the policy and Shelby is not liable to defend or indemnify her against actions arising out of this accident.

The recent case of Wheeler v. State Farm Mutual Automobile Insurance Co., Ohio App., 183 N.E.2d 424, provides further reason for this conclusion. The holding of that case indicates that Shelby would be the insurance carrier on the traded-in 1955 Mercury until a new title for it was issued to Euclid. If Shelby were held to be the insurer of the 1957 Mercury before its title was transferred to Statler, it would at the same time continue to be the insurer of the old car until title to it was issued to Euclid. Absent an express provision in the policy providing for such double liability, there is no reason to imply it, especially when such implication would not be in accord with the philosophy of Brewer v. DeCant, 167 Ohio St. 411, 149 N.E.2d 166 (1958).

Therefore, Shelby is not liable to defend O'Malley in any actions arising out of this accident, nor is it liable to indemnify her against any losses so arising.

The complaint asks for a determination of the obligations of Hardware and Shelby in regard to defenses of, and liabilities to, Statler in actions arising out of this accident. However, in view of the fact that the parties did not submit

briefs giving separate conclusions as to any duties that might be owed to Statler, and in further view of the fact that there evidently are no actions pending against Statler arising out of this accident, and that the statute of limitations long since has run, the Court will not enter upon what would be an academic discussion of such liability.