RICE ET AL., APPELLANTS, *v.* JODREY; AUTO-OWNERS INSURANCE COMPANY, APPELLEE.

(No. CA84-01-001—Decided July 16, 1984.)

*Dooley & Heath Co., L.P.A.,* and *James V. Heath,* for appellant Allstate Insurance Company.

*McConn & Cutrell* and *Jay D. Cutrell,* for appellants Charles D. Rice, Jr., and Wanda Kirschner.

*Freund, Freeze & Arnold Co., L.P.A., Stephen V. Freeze* and *Shauna K. Farquhar,* for appellee.

JONES, J. On June 11, 1981, plaintiffs-appellants Charles Rice, Wanda Kirschner and Allstate Insurance Company (Rice's insurer) filed a complaint in the Court of Common Pleas of Brown County, naming as defendants Mabel Fay Jodrey and Auto-Owners Insurance Company ("Auto-Owners"). The complaint sought damages for bodily injuries and property damage arising from an automobile accident involving Rice and Jodrey which occurred on June 24, 1979. In the complaint, the plaintiffs alleged that they were entitled to compensation from Auto-Owners since it insured the vehicle driven by Jodrey at the time of the collision.

Following a lengthy period of discovery, Auto-Owners filed a motion for summary judgment on August 6, 1983. A hearing was conducted on the motion and on November 29, 1983, the court rendered its opinion, finding that there

was no genuine issue of material fact and that Auto-Owners was entitled to judgment as a matter of law. A judgment entry was filed on December 30, 1983, pursuant to Civ. R. 54(B), providing that Jodrey was not an insured party under the insurance policy issued by Auto-Owners. All three plaintiffs have filed a timely notice of appeal and assert one assignment of error which reads as follows:

"The trial court erred to the prejudice of plaintiffs-appellants in granting summary judgment in favor of defendant-appellee on the issue of whether Mabel Jodrey was an insured under their policy of insurance since there are substantial genuine issues of material fact."

The salient facts of this case are as follows.

Dr. Bradley Lemberg resided with his wife, Renee, and their children in Cincinnati, Ohio. In 1978, Tammy Jodrey, a student at Southern Ohio Business College, began living with the Lembergs as part of the college home-placement service, the purpose of which was to provide out-of-town students with a residence while they were in school. Although she lived with the Lembergs for the greater part of the time she was in school, Tammy did return home to her parents' residence in Georgetown, in Brown County, Ohio, during holidays, vacations and other periods of time when she was not in school.

Under the suggested guildelines of the college's placement service program, Tammy was given room and board and a small stipend by the Lembergs in exchange for providing babysitting services and helping to take care of the Lemberg children. Since her family was unable to provide her with transportation, Tammy was permitted to use one of the Lembergs' three automobiles for driving to and from school. Tammy was given her own set of keys to the Lembergs' MG Midget. However, when she wanted to use the MG for purposes other than going to classes, Tammy was required to obtain the specific permission of Dr. or Mrs. Lemberg before she could use the car for personal reasons.

In June 1979, Tammy asked Dr. Lemberg if she could use a new 1980 Oldsmobile Omega recently acquired by the Lembergs in order to visit her parents in Georgetown. Dr. Lemberg gave Tammy permission to use the Omega to visit her parents and told her to be careful. While in Georgetown, Tammy's half sister, defendant Mabel Jodrey, asked Tammy if she could use the Omega for an emergency. Tammy gave the keys to the Omega to her sister, who promptly took the vehicle, and in the early morning hours of June 24, 1979, was involved in an accident with a vehicle driven by Rice, in which Kirschner was a passenger.

At the time of the accident, the Lembergs' Omega was insured under a policy issued by Auto-Owners. There is no dispute that the policy was in full force and effect at the time of the accident. Those clauses of the policy which are relevant to the disposition of this case read as follows:

"I COVERAGES

"A. BODILY INJURY LIABILITY

"B. PROPERTY DAMAGE LIABILITY

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of A. bodily injury or B. property damage neither expected nor intended from the standpoint of the insured and arising out of the ownership, maintenance or use, including the loading or unloading thereof, of the automobile.

"* * *

"III DEFINITIONS

"A. 'INSURED' shall mean:

"(1) wherever used in Coverages A and B and in other parts of this policy when applicable to these coverages, the named insured and any person using the automobile * * * provided the actual use thereof is with the permission of the named insured or if the named insured is an individual, with the permission of an adult member of the household who is not a chauffeur or domestic servant."

The trial court determined that Mabel Jodrey was not covered under the policy issued by Auto-Owners to the Lembergs and granted Auto-Owners' motion for summary judgment. Appellants contend that several genuine issues of material fact exist which would make the granting of summary judgment improper. Appellants contend that there is a genuine issue as to whether the actual use of the Lembergs' vehicle by Mabel at the time of the accident could reasonably be calculated to be within the Lembergs' permission. Appellants further argue that a genuine issue exists as to whether Tammy Jodrey had the implied authority to delegate permission to Mabel to use the automobile, such implied authority resting on the broad scope of the initial permission granted to Tammy by the Lembergs or from the attending circumstances and conduct of the parties.

In *West* v. *McNamara* (1953), 159 Ohio St. 187 [50 O.O. 229], the plaintiff was injured in an automobile accident involving a vehicle owned by a business which had given one of its employees permission to use the vehicle. The employee in turn gave permission to his wife to use the vehicle. McNamara, the wife's nephew, was using the vehicle at the time of the accident. In holding that McNamara was not an insured under the company's insurance policy, the Supreme Court held that McNamara's use of the vehicle at the time of the accident was not with the permission of the named insured, *i.e.*, the company which owned the car. McNamara was not driv-

ing the car for any purpose mutually beneficial to either the company or its employee who had been given permission to use the car.

The Supreme Court stated that "* * * where an automobile liability insurance policy contains the language, 'provided the actual use of the automobile is with the permission of the named insured,' it means that the use to which the vehicle is being put at the time of the accident must be with permission of the named insured. * * *" *West, supra,* at 196-197.

As was the case in *West, supra,* Tammy Jodrey, the original permittee, had no control or direction over the operation of the car at the time of the accident between Mabel Jodrey and appellants Rice and Kirschner. Tammy, like the original permittee in *West,* was not in the car at the time of the accident. It is also evident from the record that Mabel was not driving the car for any purpose which was to the benefit of the named insured (the Lembergs) or the first permittee (Tammy Jodrey). In fact, there is evidence in the record to indicate that the alleged "emergency" which Mabel used the Lembergs' vehicle for was nothing more than a desire on her part to visit a relative. Tammy was given use of the Lembergs' automobile for the purpose of visiting her parents in Georgetown. It is equally evident that Mabel's use of the vehicle was in no way related to or associated with the specific permission granted by Dr. Lemberg to Tammy. Accordingly, we find that Mabel's actual use of the Lembergs' automobile at the time of the accident was not with the permission of the Lembergs. Consequently we find that there was no genuine issue as to whether Mabel's actual use of the vehicle at the time of the accident was with the Lembergs' permission.

Appellants also argue that a genuine issue exists as to whether Tammy had the implied authority from the Lem-

bergs to delegate permission to Mabel to use the automobile. Appellants contend that such authority may be implied from the scope of the initial permission given to Tammy by the Lembergs or from the attending circumstances and conduct of the parties. In *Fox* v. *Crawford* (App. 1947), 50 Ohio Law Abs. 553, the Court of Appeals for Belmont County considered the question of whether an individual operating a motor vehicle had the implied authority from the insured owner to operate the automobile; such authority, if it existed, would arise from the permissive authority granted by the insured owner to the original permittee, who authorized the second permittee to use the vehicle, who in turn gave the operator of the vehicle (the third permittee) permission to use it, so as to bring the operator within the coverage of the insured's policy. Although the decision states that the named insured could signify his or her permission to use an automobile by a course of conduct, such implied permission must have been by the act or conduct of the named insured, and must have amounted to his or her intended selection of the individual driving the vehicle as such driver.

In the case at bar, the transcript of Dr. Lemberg's deposition reveals that he gave Tammy permission to use the Omega automobile to visit her parents in Georgetown. Dr. Lemberg gave such permission under the belief that Tammy would only be gone for the weekend, whereas she intended to spend an entire vacation of about two weeks at her parents' home. Dr. Lemberg indicated that had he known that Tammy would have been gone for such an extended period of time, he would not have allowed her to use the Omega. Dr. Lemberg also testified that he told Tammy that she should only use the car for purposes of traveling to and from her parents' home. Appellants submitted the affidavit of Tammy Jodrey, in which she stated that, to the best of her recollection, Dr. Lemberg did not qualify his permission to use the Omega, nor did he specifically tell her that no one else could drive the car.

Even construing the evidence most strongly in favor of appellants, and accepting their position that the Lembergs never limited or restricted the permission they gave to Tammy, we feel that the record is such to sustain the court's finding that there was no genuine issue as to whether the Lembergs had granted the implied authority to Tammy to allow another individual to use the vehicle. Even if the Lembergs failed to instruct Tammy that no one else could use the car, their silence is not enough to warrant a finding of implied authority when considered in conjunction with their conduct. Although the Lembergs may have trusted Tammy with the use of their automobiles in the past, it is clear that such trust was never extended to other individuals. Tammy even states in her affidavit that her reason for asking for the use of the Omega was for the limited purpose of visiting her parents. There is nothing to indicate, either by their silence or their conduct, that the Lembergs intended that anyone other than Tammy should drive their vehicles or that Tammy was permitted to delegate the initial authority granted to her to a second individual.

One who is given permission to use a motor vehicle by the insured owner cannot delegate this authority to a second permittee so as to bring the use of the vehicle by that person within the protection of the insured's policy where the initial permission by the insured owner is silent as to the issue of delegation of authority. *Fox, supra,* at 557. See, also, *Marolt* v. *Lisitz* (1952), 94 Ohio App. 298 [51 O.O. 451]. There is nothing in the record to indicate that the Lembergs knew that Mabel Jodrey would be driving their car or would have any reason to believe that anyone other than Tammy would be driving their car. Thus, it could

not be construed from the Lembergs' silence that Mabel was driving with the implied-in-fact permission of the Lembergs and was an individual coming within the scope of coverage under the terms of their policy. See *Hardware Mut. Cas. Co.* v. *Shelby Mut. Ins. Co.* (N.D. Ohio 1962), 213 F. Supp. 669. Accordingly, we find that there was no genuine issue as to whether Tammy had the implied permission or authority of the Lembergs to grant the use of the Lemberg automobile to another individual so as to bring that individual within the coverage of the insurance policy on the Lemberg vehicle.

Appellants finally contend that Mabel Jodrey is covered under the policy issued by appellee since Mabel's use of the car was with the permission of Tammy, who was an adult member of the Lembergs' household. The policy provides that an individual who uses an insured automobile with the permission of an adult member of the insured's household is covered by the policy. Appellants take the position that Tammy was a member of the Lembergs' household and therefore had the authority to delegate permission to Mabel to use the Omega.

In the recent case of *Shear* v. *West American Ins. Co.* (1984), 11 Ohio St. 3d 162, the Supreme Court laid down a guideline for defining the term "household" as used within an automobile insurance policy. The plaintiff, in *Shear, supra,* while a pedestrian, was struck by a motor vehicle driven by an uninsured motorist. Plaintiff brought suit to collect, *inter alia,* under his son's policy, which provided for coverage to the son and members of his household, claiming that he was a member of his son's household. In *Shear, supra,* as in the case at bar, the term "household" was not defined in the insurance policy. The Supreme Court stated that the term must therefore be given "its common, ordinary, usual meaning." *Id.* at 166. In order to determine what the common, ordinary, and usual meaning of the term "household" was, the Supreme Court looked to a dictionary definition of the word, and found that household was defined as " ' * * * those who dwell under the same roof and compose a family: * * * a social unit comprised of those living together in the same dwelling place * * *.' " *Id.* The court then went on to examine the relationship between the plaintiff and his son, finding that although they lived in the same house, each was separately employed and non-dependent upon the other with each separately owning and insuring his respective automobile. In addition, the plaintiff was the exclusive owner of the house and the son, although fully emancipated, lived with his father since birth and always had had full use of the house. The court determined that there was ample evidence to support a finding that the plaintiff and his son were part of a family unit and were members of the same household under the court's definition of that term.

Turning to the case at bar, Tammy Jodrey, in her affidavit, claims that she believed she was a member of the Lemberg household and was not treated as a mere domestic servant. The record discloses that Tammy was given room and board and a small stipend in exchange for helping to look after the Lemberg children. It is also apparent that she did not permanently reside with the Lembergs, but rather she would return to her parents' home in Georgetown for holidays and summer vacations. Considering the nature of the situation, and the circumstances under which Tammy resided with the Lembergs, it is apparent that the living arrangement was as much to the benefit and convenience of the Lembergs as it was to the convenience and benefit of Tammy, and indirectly, to Southern Ohio Business College. While the Lembergs may have provided Tammy

with a family-like environment, it was apparent that such was not designed to be a permanent replacement for Tammy's actual family. Thus, we do not feel that the facts of the case at bar reflect that Tammy was a member of the Lembergs' household within the ordinary, usual and common meaning of that term.

In addition, it is apparent that Tammy's stay with the Lembergs was on strictly a temporary basis, the living arrangement being designed to provide Tammy with a place to live while she was in school. In fact, Mrs. Lemberg testified in her deposition that Tammy returned to the Lembergs' residence after the accident and continued to stay there until her graduation. In *Shear, supra,* the Supreme Court considered the lack of evidence that the living arrangement between the plaintiff and his son was temporary in nature in determining that the parties were members of the same household. Compare *Napier* v. *Banks* (1969), 19 Ohio App. 2d 152 [48 O.O.2d 343]. Such is not the situation in the case at bar where Tammy's stay with the Lembergs was for a definite period of time. In addition, there is evidence that the arrangement between Tammy and the Lembergs was of a contractual nature and of an arm's-length arrangement unlike that in *Shear, supra.* When we consider the circumstances of the relationship between Tammy and the Lembergs and view such relationship in light of the recent judicial definition of "household," we conclude that there was no genuine issue of fact as to whether Tammy was a member of the Lembergs' household thereby possessing the authority to permit Mabel Jodrey to use the Lembergs' automobile.

When construing the available evidence in a manner most favorable to appellants, we still find that the trial court was correct in concluding that there was no genuine issue of fact and properly found that Mabel was not insured under the policy issued by appellee on the Lembergs' automobile. For these reasons, the sole assignment of error raised by appellants is hereby overruled.

*Judgment affirmed.*

HENDRICKSON, P.J., and KOEHLER, J., concur.